**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

KING'S RANCH OF JONESBORO, INC.                                              PLAINTIFF

v.                                      No. 3:10CV00096 JLH

CITY OF JONESBORO, ARKANSAS                                                  DEFENDANT

**OPINION & ORDER**

On April 26, 2010, King's Ranch of Jonesboro, Inc., an Arkansas nonprofit corporation, filed a complaint in this Court against the City of Jonesboro, Arkansas, for alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(f)(1)-(3) (2006).  Specifically, the complaint alleges that the City of Jonesboro denied housing to handicapped children by refusing King's Ranch's request to waive the definition of "family" in its zoning resolution so that King's Ranch could house eight children and two house parents in a single family unit.  The parties have filed cross-motions for summary judgment.  For the following reasons, the plaintiff's motion for summary judgment is granted, and the defendant's motion for summary judgment is denied.

**I.**

In February 2008, King's Ranch purchased 10.57 acres located at 2816 Day Drive, Jonesboro, Arkansas, to operate as a home for up to eight abused, neglected, and abandoned children as well as two full-time houseparents.  The property is located in Jonesboro's R-1 residential zoning district and contains a 4,900 square foot brick home.  Pursuant to the City of Jonesboro's zoning resolution, a group of more than five unrelated persons living together in a single family home must obtain a conditional use permit to reside in the city's R-1 district as a "group residential."  The resolution defines "group residential" as "[t]he use of a site for occupancy by groups of more than five (5)

persons, not defined as a family. Typical uses include fraternity or sorority houses, dormitories, residence halls, and boarding or lodging houses." (Pl.'s Mot. for S.J. Ex. 1 at 3.) In contrast, a "family" is defined as "[o]ne or more persons related by blood, marriage or adoption, or a group of not more than five (5) unrelated persons living together and subsisting in common as a single, non-profit housekeeping unit utilizing only one kitchen." (*Id.*)

In January 2008, King's Ranch submitted an application for a conditional use permit to operate as a group residential to house up to eight unrelated children between the ages of six and twelve. During the Metropolitan Area Planning Commission meetings in February and March 2008, the application was denied. King's Ranch appealed the decision to the Jonesboro City Council. At the City Council meeting in which the issue was considered, residents of the neighborhood in which the proposed facility was located expressed concerns over the operation of a group home in their neighborhood. The City Council denied King's Ranch's appeal.

After its request for a conditional use permit was denied, King's Ranch filed suit in the Circuit Court of Craighead County, Arkansas, arguing that the City Council's denial of their conditional use permit was arbitrary and capricious. The circuit court found that there was a rational basis for the City Council to deny the conditional-use permit, and King's Ranch appealed its decision to the Arkansas Supreme Court. The supreme court determined that the circuit court had erred in applying the rational basis standard of review instead of *de novo* review, and it reversed and remanded to the circuit court, where the case is currently pending. *King's Ranch of Jonesboro, Inc., v. City of Jonesboro*, No. 09-1311, 2011 WL 1177097 (Ark. Mar. 31, 2011).

In addition to the appeal, King's Ranch also sent a letter dated July 13, 2009, to the City of Jonesboro, making an official request for reasonable accommodation pursuant to the FHA.

Specifically, King's Ranch requested that the City of Jonesboro waive its definition of "family" as it applied to King's Ranch's proposed use. On August 7, 2009, King's Ranch sent another letter to the City requesting reasonable accommodation. On January 19, 2010, the Jonesboro City Council acknowledged receipt of the August 7 letter, and City Attorney Phillip Crego provided a report to the City Council in which he stated that, in his opinion, "the City code is reasonable and will allow King's Ranch to do what they want to do, but just not on the scale they are asking for." (Pl.'s Mot. for S.J. Ex. 4 at 4-5.) Based in part on his recommendation, the City Council voted to "stand on the current City code and allow federal court to rule on the issue." (*Id.*) King's Ranch alleges that its request is reasonable and necessary because the costs involved in maintaining a home and providing care to children make it economically unfeasible for it to operate as a children's home unless it can do so with eight children. The City of Jonesboro disagrees.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e))

(emphasis in original).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

### III.

The FHA's reasonable accommodation provision prohibits "refusal[s] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B).  As the Eleventh Circuit has explained,

> the duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made.  Defendants must instead have been given an opportunity to make a final decision with respect to the Plaintiffs' request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law.

*Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008) (quoting *Prindable v. Ass'n of Apartment Owners*, 304 F. Supp. 2d 1245, 1258 (D. Haw. 2003) (citations, quotation marks, alteration, and ellipsis omitted)).  "[P]laintiffs themselves need not be handicapped and are permitted to argue on behalf of the proposed residents of their home that defendants discriminated against those residents on the basis of their handicap." *Cohen v. Township of Cheltenham, Penn.*, 174 F. Supp. 2d 307, 324 n.12 (E.D. Pa. 2001).

The City of Jonesboro acknowledges that it received two letters from King's Ranch requesting accommodation on behalf of handicapped children that King's Ranch alleged was

reasonable and necessary. The City denies, however, that King's Ranch is entitled to protection under the FHA because King's Ranch is not an organization designed to serve handicapped children. The City of Jonesboro also argues that there is no evidence that any of the children who would live at the King's Ranch facility would be handicapped.

A threshold issue for finding liability under 42 U.S.C. § 3604(f)(3)(B) is whether the proposed residents of the group home would be "handicapped." Congress has defined "handicap" as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). A "mental impairment" includes "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 24 C.F.R. § 100.201(a)(1) (2010). "Major life activities" include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 24 C.F.R. § 100.201(b).

King's Ranch offers affidavit testimony that many of the children currently enrolled in its program suffer from minor to moderate mental or behavioral disabilities, including Reactive Attachment Disorder, and that its staff is specifically trained to deal with and has a desire to serve children with these disabilities. King's Ranch also provides evidence of one specific child currently living at the residence who has been diagnosed with Reactive Attachment Disorder, Bipolar Disorder, and Attention Deficit Hyperactivity Disorder ("ADHD"). According to the affidavit of Dr. Terry Levy,

> King's Ranch currently provides a home to a 7 year old female at King's Ranch who is diagnosed with [Reactive Attachment Disorder], Bipolar Disorder and ADHD. She was removed from her biological mother at age one and placed in foster care,

5

>moved to and from several foster homes, and finally adopted at 4 years old. For 3 years in the adoptive family she exhibited severe psychological and social difficulties, including acting-out in school, inability to make friends, and failing to attach to her parents. This child is illustrative of the type of youngster that will be residing in the King's Ranch children's home.

(Levy Aff. ¶ 18.) The affidavit also states that these disorders substantially limit the life activities of children at home, in school, and in other social settings. This undisputed evidence shows that King's Ranch will in fact house handicapped children and, thus, is entitled to protection under the FHA. *See Cohen*, 174 F. Supp. 2d at 325 ("[P]laintiffs in this case must establish that individual children who would reside in plaintiffs' proposed group home would suffer from an impairment that substantially limits one or more of such children's major life activities.") (finding that plaintiffs were not entitled to FHA protection because they failed to produce evidence that any of their potential residents would have a physical or mental impairment); *Keys Youth Servs., Inc. v. City of Olathe, Kan.*, 52 F. Supp. 2d 1284, 1299 and n.16 (D. Kan. 1999) (finding that, although the plaintiff's home is not for the handicapped, the plaintiff had provided evidence "that *some* potential residents meet the FHA definition of handicapped," and even though the plaintiff could not know who the specific residents would be at the facility, "the Court [could] assume[ ] that at any given point, the residence would include both handicapped and non-handicapped youth and that the mix would vary over time"), *rev'd in part on other grounds*, 248 F.3d 1267 (10th Cir. 2001).

## IV.

The City of Jonesboro next contends that, even if King's Ranch is entitled to protection under the FHA, the request for accommodation is neither reasonable nor necessary. Under the FHA, disabled individuals must be provided reasonable "accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [them] equal opportunity to use and

enjoy a dwelling." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006) (citing 42 U.S.C. § 3604(f)(3)(B)).

> The basic elements of an FHA[ ] accommodation claim are well-settled. First, the requested accommodation must be reasonable, which, as we have stated, is a "highly fact-specific inquiry and requires balancing the needs of the parties. An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." *Oconomowoc Residential Programs* [*v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)] (internal citations omitted). In the zoning context, a municipality may show that a modification to its policy is "unreasonable if it is so at odds with the purpose behind the rule that it would be a fundamental and unreasonable change." *Id.* (internal quotation marks and citations omitted).
>
> Second, the requested accommodation must be "necessary," meaning that, without the accommodation, the plaintiff will be denied an equal opportunity to obtain the housing of her choice. *See id.* at 784; *see also Giebeler v. M & B Assocs.,* 343 F.3d 1143, 1155 (9th Cir.2003); *Smith & Lee Assocs., Inc. v. City of Taylor,* 102 F.3d 781, 795 (6th Cir.1996). This has been described by courts essentially as a causation inquiry. *See, e.g., Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains,* 284 F.3d 442, 460 (3d Cir.2002) ("This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be necessary." (internal quotation marks and citations omitted)).

*Id.* at 749. In the Eighth Circuit, "the plaintiff has the burden to show that the requested accommodation is reasonable [and necessary] upon its face, *i.e.*, ordinarily or in the run of cases. Upon such a showing, the [defendant] is left to show special (typical case-specific) circumstances that demonstrate [unreasonableness or] undue hardship in the particular circumstances." *Developmental Servs. of NE v. City of Lincoln*, 504 F. Supp. 2d 714, 723 (D. Neb. 2007) (quoting *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004)) (internal quotations omitted)). In other words, the plaintiff must show that the requested accommodation is necessary to afford equal opportunity to handicapped individuals and possible to implement. *Huberty v. Washington Cnty. Housing & Redevelopment Auth.*, 374 F. Supp. 2d 768, 773 (D. Minn. 2005).

The Vice President of the Board of Directors for King's Ranch says in an affidavit that the

request to house eight children at a time is necessary because

> King's Ranch relies completely upon donations. Most donors or donor families who support our ministry sponsor an individual child living at King's Ranch. Thus, King's Ranch's financial support is based upon or directly tied to the number of children King's Ranch provides assistance to.
>
> 14. If King's Ranch is not permitted to use the property in the manner intended—to house eight children and two houseparents—King's Ranch will be unable to maintain the expenses related to operating the home.

(Cooper Aff. ¶¶ 13-14.); *see Developmental Servs. of NE*, 504 F. Supp. 2d at 724 (finding that plaintiff had met its burden of showing the accommodation to be reasonable and necessary based in part on evidence presented at trial that, if the accommodation is not granted, the plaintiff may be financially unable to continue providing services). The City of Jonesboro does not rebut this evidence with any evidence of its own to suggest that King's Ranch feasibly could house fewer than eight children.

King's Ranch also alleges that its request is reasonable because it will impose no additional expense or undue burden on the City of Jonesboro, nor would it "fundamentally alter the single-family character of the neighborhood." (Pl.'s Mot. for S.J. Ex. 2.) Through affidavit testimony, King's Ranch contends that the addition of several children to the property would not impact parking, traffic, noise, utility uses, or any other concerns of zoning differently than an ordinary "family" of the same size. It points out that the City already allows conditional use permits for group residentials, which typically include fraternities and sororities, dormitories, residence halls, and boarding or lodging houses—entities which would affect the character of the neighborhood in a much more significant manner than a ten-person children's home. In fact, the staff report proffered by Otis T. Spriggs, Planning Director for the City of Jonesboro, which was provided to the

Metropolitan Area Planning Commission, states that "[s]taff does not feel that the ranch-like environment will be a detriment to the surrounding neighborhoods if the use is operated under an *around-the-clock* supervised program for the youth. . . . The . . . home to be used will remain residential in character and use, and a [sic] extreme demand for traffic has not been demonstrated by the applicant to cause negative impact beyond that expected of a single family residence." (Def.'s Mot. for S.J. Ex. C at 9.)

King's Ranch has met its burden of proving the necessity and reasonableness of its request with unrebutted evidence, and the burden shifts to the City of Jonesboro to prove that the request is unreasonable. In order to "establish that the accommodation proffered by [the applicant] was not reasonable, [the municipality] [i]s required to prove that it could not have granted the variance without:" (1) "imposing undue financial and administrative burdens;" (2) "imposing an 'undue hardship' upon the Township;" or (3) "requiring a fundamental alteration in the nature of the [zoning] program." *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996) (internal citations and quotation marks omitted); *see also Developmental Servs. of NE*, 504 F. Supp. 2d at 724-25. This inquiry is "highly fact-specific, requiring a case-by-case determination." *Hovsons, Inc.*, 89 F.3d at 1104.

Although the City of Jonesboro argues that King's Ranch's waiver request is unreasonable, it offers no evidence that granting the request would impose an undue financial or administrative burden on the City of Jonesboro or result in any undue hardship. Nor does the City of Jonesboro offer evidence that the request would require a fundamental change in the nature of the zoning program. In fact, as King's Ranch points out, the zoning program is designed with requests like that of King's Ranch in mind; the City of Jonesboro currently offers conditional use permits to groups

9

like King's Ranch, which are comprised of more than five unrelated individuals, to live in residentially zoned areas. The City of Jonesboro presents absolutely no evidence to suggest that King's Ranch's waiver request is unreasonable. Nor does it seek to postpone the Court's ruling on the motion under Federal Rule of Civil Procedure 56(d). With trial just a few weeks away, the City has had ample time to discover and offer evidence to support its arguments, and it has not done so.

For the reasons stated above, the plaintiff's motion for summary judgment is GRANTED, and the defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED this 25th day of April, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE